UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF GEORGIA
ALBANY DIVISION

| | | |
|---|---|---|
| DESHAWN GERVIN, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CIVIL ACTION NO. 1:21-CV-67-LAG |
| | ) | |
| PAMELA FLORENCE, et al., | ) | |
| | ) | |
| Defendants. | ) | |

**DEFENDANTS' BRIEF IN SUPPORT OF THEIR MOTION FOR SUMMARY JUDGMENT**

Plaintiff DeShawn Gervin has sued Defendants Pamela Florence, Hoke Hampton, and Tandria Milton, alleging a violation of his Fourth Amendment right against unreasonable seizures in connection with Defendants' actions as officers for the Georgia Department of Community Supervision (or its predecessor unit within the Georgia Department of Corrections). Defendants move for summary judgment.

**I. THE FACTS FOR SUMMARY JUDGMENT**[1]

The uncontroverted evidence, Plaintiff's version of the facts,[2] and the

---

[1] Defendants do not necessarily concede that all of these facts accurately describe what occurred, but they submit that these are the operative facts for purposes of summary judgment. "[T]he 'facts,' as accepted for purposes of summary judgment, may not be the actual facts of the case ...." *Feliciano v. City of Miami Beach*, 707 F.3d 1244, 1247 (11th Cir. 2013).

[2] *See Evans v. Stephens*, 407 F.3d 1272, 1278 (11th Cir. 2005) (*en banc*) ("when conflicts arise between the facts evidenced by the parties, we credit the nonmoving party's *version*. Our duty to read the record in the nonmovant's favor stops short of not crediting the nonmovant's testimony in whole or part: the courts owe a

controverted evidence viewed in the light most favorable to Plaintiff is as follows:

In 2011, Plaintiff DaShawn Gervin was charged with criminal intent to commit burglary and, in January 2012, he pled guilty to the crime. (SMF, ¶¶ 1-2). He was sentenced to one year in jail and nine years on probation. (*Id.*, ¶ 3). The only condition on his probation was that he not return to the South Georgia Judicial Circuit.[3] (*Id.*, ¶ 4). He was released from jail in January 2012. (*Id.*, ¶ 5). Upon his release, he ws driven to the Albany bus station where he got on a bus to Missouri. (*Id.*, ¶ 6).

Defendant Pamela Florence is a community supervision officer for the Georgia Department of Community Supervision (DCS). (*Id.*, ¶ 7). In 2012, she was a probation officer with DCS's predecessor unit within the Georgia Department of Corrections.[4] (*Id.*, ¶ 8). In May 2012, after Plaintiff did not report to the supervisory agency for intake after his release, Florence requested and obtained a warrant for Plaintiff's arrest for a parole violation for absconding from supervision. (*Id.*, ¶ 9).

In May 2014, Defendant Hoke Hampton joined the supervisory agency, working under Florence's direction. (*Id.*, ¶ 10). Under Georgia law, the running of a

---

nonmovant no duty to disbelieve his sworn testimony which he chooses to submit for use in the case to be decided") (emphasis in original).

[3] The South Georgia Judicial Circuit covers Mitchell, Calhoun, Baker, Grady, and Decatur Counties. (SMF, ¶ 4 n.3).

[4] DCS came into being on July 1, 2015, combining similar supervisory functions previously assigned to the Georgia Department of Corrections and the Georgia Board of Pardons and Paroles. O.C.G.A. § 42-3-3.

sentence of probation is tolled when a probationer fails to report to his probation supervisor. (*Id.*, ¶ 11); O.C.G.A. § 42-8-36(a). At Florence's instruction, Hampton filed an affidavit requesting that Plaintiff's probation sentence be tolled. (*Id.*, ¶ 12).

On April 26, 2019, Plaintiff was arrested in North Carolina on the Georgia probation-violation warrant. (*Id.*, ¶ 13). He remained in jail in North Carolina until he was extradited to Georgia. (*Id.*, ¶ 14). After extradition, he was housed in the Mitchell County jail until the hearing on his probation violation. (*Id.*, ¶ 15).

Defendant Tandria Milton is a former DCS community supervision officer.[5] (*Id.*, ¶ 16). In July 2019, after Plaintiff was returned to Mitchell County, Milton prepared and submitted a petition for the modification/revocation of probation, requesting that Plaintiff's probation be revoked because he had violated the terms and conditions of his release. (*Id.*, ¶ 17). Florence reviewed the petition before it was submitted. (*Id.*, ¶ 18).

On August 7, 2019,[6] the Superior Court held a hearing on the alleged probation violation. (*Id.*, ¶ 19). The Superior Court concluded that the probation violation had not been proven, reinstated Plaintiff's probation, and told Plaintiff that he was free to go. (*Id.*, ¶ 20). Plaintiff was released from jail on the same day. (*Id.*, ¶ 21).

Plaintiff's probation ended in January 2021, nine years after he got out of jail. (*Id.*, ¶ 22).

---

[5] Milton now performs a similar job in Florida. (SMF, ¶ 15 n.5).
[6] Although the transcript is dated February 2, 2021, the parties agree that this is a typographical error and that the hearing occurred in August 2019. (SMF, ¶ 19 n.6).

## II.  ARGUMENT AND CITATION OF AUTHORITY

A.  **The legal standard for summary judgment**

The moving party is entitled to summary judgment if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.  *Fed.R.Civ.P. 56(c).*  If the non-moving party bears the ultimate burden of proof regarding the claim at issue in the motion, that party, in response to the motion, must go beyond the pleadings and establish, through competent evidence, that there truly is a genuine, material issue to be tried.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986).

The non-moving party must present enough evidence to demonstrate that he can meet the substantive evidentiary standards that apply to the case, that is, that a jury might return a verdict in his favor.  *Anderson v. Liberty Lobby*, 477 U.S. 242, 255 (1986).  Although all reasonable inferences from the evidence are resolved in favor of the non-moving party, "an inference based on speculation and conjecture is not reasonable."  *Chapman v. Am. Cyanamid Corp.*, 861 F.2d 1515, 1518-19 (11th Cir. 1988).  "Speculation does not create a *genuine* issue of fact; instead, it creates a false issue, the demolition of which is a primary goal of summary judgment."  *Cordoba v. Dillard's, Inc.*, 419 F.3d 1169, 1181 (11th Cir. 2005).

"Summary judgment is designed to weed out those cases . . . so clearly lacking in merit that the full trial process need not be activated to resolve them."  *-Holley v.*

*Northrop Worldwide Aircraft Services, Inc.*, 835 F.2d 1375, 1377 (11th Cir. 1988). "[I]t was intended as a device to diminish the effort, time, and costs associated with unnecessary trial." *Id.* For the reasons set forth below, a trial is not necessary in this case.

**B.     Plaintiff suffered no Fourth Amendment violation**.

In his complaint, Plaintiff presents his claim as simply one under the Fourth Amendment, without specifying whether it is brought as a false arrest/false imprisonment-type claim or as a malicious prosecution-type claim. Because he was arrested and held pursuant to legal process—an arrest warrant—this action sounds in malicious prosecution. *Wallace v. Kato*, 549 U.S. 384, 389-90 (2007); *Carter v. Gore*, 557 Fed. App'x 904, 906 (11th Cir. 2014).

To prove a claim for malicious prosecution, plaintiffs must show: (1) a criminal prosecution instituted or continued by the defendant, (2) with malice and without probable cause, (3) that is terminated in his favor, and (4) resulted in damages. *Wood v. Kesler*, 323 F.3d 872, 881–82 (11th Cir. 2003). Plaintiff cannot satisfy the first element because probation-revocation proceedings are not criminal prosecutions for the purposes of a malicious-prosecution claim. *Smith v. Mitchell*, 856 Fed. App'x 248, 250 (11th Cir. 2021).

The *Smith* decision, though unpublished, rests on a firm foundation. Georgia's appellate courts have indicated that probation revocation proceedings in Georgia are not criminal in nature. For example, in *State v. Thackston*, 289 Ga. 412, 414 (2011),

5

the Georgia Supreme Court characterized such proceedings as "administrative" in nature. Likewise, in *Morgan v. State*, 308 Ga. App. 69, 71 (2011), the Georgia Court of Appeals concluded that "a proceeding to revoke a probated sentence … is not a criminal proceeding." Revocation proceedings in Georgia therefore do not rise to the level of a "criminal prosecution." And this makes sense because the purpose of probation revocation proceedings is "to determine whether the probationer has complied with the conditions of his probation." *Thackston*, 289 Ga. at 413. While such proceedings may result in further imprisonment, the probationer has *already* been prosecuted, convicted, and sentenced for the underlying crime.

Several other federal courts are in accord. *See, e.g.*, *U.S. v. Whitney*, 649 F.2d 296, 297 (5th Cir. 1981) (probation revocation proceedings are not "essentially criminal" in nature because they "are not designed to punish a criminal defendant for violation of a criminal law" but are instead meant "to determine whether a … probationer has violated the conditions of his … probation"); *Walker v. Dean*, 2016 U.S. Dist. LEXIS 76301 at *8 (N.D. Ga. June 13, 2016) ("a probation revocation is not a prosecution for a criminal offense for purposes of a Section 1983 malicious prosecution" claim because it is "not a stage of a criminal prosecution") (quoting *Gagnon v. Scarpelli*, 411 U.S. 778, 782 (1973)); *Felker v. Christine*, 796 F. Supp. 135 (M.D. Pa. 1992) (a probation revocation hearing is not a criminal prosecution for the purpose of a malicious prosecution claim), affirmed in *Felker v. Christine*, 983 F.2d

6

1050 (3d Cir. 1992); *Zabresky v. Schmeling*, 2014 U.S. Dist. LEXIS 13311, *16 (M.D. Pa. 2014) (same).

As noted above, because this revocation process was not a criminal prosecution Plaintiff cannot prove a required element of a malicious prosecution claim. Accordingly, Defendants are entitled to summary judgment.

**C.   Defendants Hampton and Florence caused Plaintiff no harm in connection with the tolling application**.

In pertinent part, § 1983 states that:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State . . . *subjects, or causes to be subjected*, any citizen of the United States . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution . . . shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

42 U.S.C. § 1983 (emphasis added). Accordingly, in any § 1983 action, the plaintiff must prove "an affirmative causal connection between the actions taken by a particular person 'under color of state law' and the constitutional deprivation." *Williams v. Bennett*, 689 F.2d 1370, 1380 (11th Cir. 1982). "A causal connection may be established by proving that the official was personally involved in the acts that resulted in the constitutional deprivation." *Zatler v. Wainwright*, 802 F.2d 397, 401 (11th Cir. 1986).

The record is clear that Defendant Hampton sought to have the running of Plaintiff's term of probation tolled and that Defendant Florence supervised him in this effort. (SMF, ¶¶ 11-12). But the record is equally clear that Plaintiff's probation

expired nine years after he was released from jail, just as it always was supposed to do. (*Id.*, ¶¶ 3, 23). Accordingly, these efforts by Hampton and Florence caused Plaintiff no cognizable harm.

### D. Defendants are entitled to qualified immunity.

Qualified immunity protects governmental defendants sued in their individual capacities so long as their conduct "does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Vinyard v. Wilson*, 311 F.3d 1340, 1346 (11th Cir. 2002). The immunity protects from suit all but the plainly incompetent or those who knowingly violate federal law. *Lee v. Ferraro*, 284 F.3d 1188, 1194 (11th Cir. 2002). The relevant question to be answered is the "objective (albeit fact specific) question," of whether a "reasonable officer" would have believed the defendant's action to be lawful in light of clearly established law and the information possessed by the defendant. *Anderson v. Creighton*, 483 U.S. 635, 641 (1987).

The public official must first show that she was acting within the scope of her discretionary authority when the allegedly wrongful acts occurred. *Vinyard*, 311 F.3d at 1346. A defendant acts within her discretionary authority when "[her] actions were undertaken pursuant to the performance of [her] duties and within the scope of [her] authority." *Rich v. Dollar*, 841 F.2d 1558, 1564 (11th Cir. 1988). Discretionary authority does not require the performance of a discretionary act; even a ministerial act is within the defendant's discretionary authority if the *Rich* test is satisfied.

8

*Jordan v. Doe*, 38 F.3d 1559, 1566 (11th Cir. 1994) (if the defendants were acting pursuant to their job functions and within the scope of their authority, it does not matter "whether such actions be characterized as ministerial or discretionary in nature"); *McCoy v. Webster*, 47 F.3d 404, 407 (11th Cir. 1995)("discretionary authority" includes "actions that do not necessarily involve an element of choice"). Additionally, "the inquiry is not whether it was within the defendant's authority to commit the allegedly illegal act," but "whether the act complained of, if done for a proper purpose, would be within, or reasonably related to, the outer perimeter of an official's discretionary duties." *Harbert International v. James*, 157 F.3d 1271, 1282 (11th Cir. 1998). For example, the issue is not whether a marshal has the authority to deliver a prisoner into unconstitutional conditions but whether he has the authority to transport and deliver prisoners. *Id.* (describing *Jordan*, 38 F.3d at 1566). Defendants clearly were acting within their authority when they performed their duties as supervisory officers.

The burden thus shifts to Plaintiff to show that immunity is not appropriate. *Vinyard*, 311 F.3d at 1346. To carry that burden, the plaintiff must show that the constitutional right asserted was clearly established at the time the alleged violation occurred. *Hope v. Pelzer*, 536 U.S. 730, 739 (2002). The "salient question" is whether the state of the law at the time of the incident gave the defendant "fair and clear warning" that his conduct with respect to the plaintiff was unconstitutional. *Id.* at 746. Liability only attaches if "the contours of the right [are] sufficiently clear that a

reasonable official would understand that what he is doing violates that right." *United States v. Lanier*, 520 U.S. 259, 270 (1997). To make this showing, a plaintiff must identify either (1) earlier case law from the Supreme Court, the Eleventh Circuit, or the Georgia Supreme Court that is materially similar to the instant case, and thus, provided clear notice of the asserted constitutional right; or (2) general rules of law that apply with obvious clarity to the circumstances, clearly establishing the unlawfulness of the defendant's conduct. *Long v. Slaton*, 508 F.3d 576, 584 (11th Cir. 2007). "'[O]bvious clarity' cases will be rare." *Coffin v. Brandau*, 642 F.3d 999, 1015 (11th Cir. 2011) (*en banc*).

"Public officials are not obligated to be creative or imaginative in drawing analogies from previously decided cases." *Hudson v. Hall*, 231 F.3d 1289, 1297 (11th Cir. 2000). "Government officials are not required to err on the side of caution when it comes to avoiding constitutional violations." *Crosby v. Monroe*, 394 F.3d 1328, 1334 (11th Cir. 2004) (internal quotations omitted). "[E]xisting precedent must have placed the statutory or constitutional question beyond debate." *Reichle v. Howards*, 132 S.Ct. 2088, 2093) (internal quotations and citation omitted). Qualified immunity applies regardless of whether the official's alleged error was a mistake of law, a mistake of fact, or a mistake based on mixed questions of law and fact. *Pearson v. Callahan*, 129 S.Ct. 808, 815 (2009).

There are no precedents clearly establishing liability under these circumstances. At the very least, the law was not clearly established at the time of

Plaintiff's arrest that a revocation proceeding is a "criminal prosecution" for the purpose of a malicious prosecution claim. Additionally, it is not clearly established that a public official can be held liable under § 1983 when that person's action or omissions cause a person no harm. The doctrine of qualified immunity therefore bars Plaintiff's claims.

### III.  CONCLUSION

For the foregoing reasons, Defendants submit that their motion for summary judgment should be granted.

        CHRISTOPHER M. CARR 551540
        Attorney General

        KATHLEEN M. PACIOUS 558555
        Deputy Attorney General

        SUSAN E. TEASTER 701415
        Senior Assistant Attorney General

        */s/ Laura L. Lones*
        LAURA L. LONES 456778
        Senior Assistant Attorney General

Please Serve:        Attorneys for Defendants
LAURA L. LONES
Department of Law, State of Georgia
40 Capitol Square, S.W.
Atlanta, Georgia  30334-1300
Telephone: (470) 355-2765
Facsimile:  (404) 651-5304
E-mail: llones@law.ga.gov

## **CERTIFICATE OF SERVICE**

I hereby certify that on this date I electronically filed the foregoing pleading with the Clerk of Court using the CM/ECF system which will automatically send email notification of such filing to all counsel of record.

This 16th day of May, 2022.

*/s/ Laura L. Lones*
Senior Assistant Attorney General