IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
ALBANY DIVISION

| | | |
|---|---|---|
| DESHAWN GERVIN, | : | |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | CASE NO.: 1:21-CV-67 (LAG) |
| | : | |
| PAMELA FLORENCE, *et al.*, | : | |
| | : | |
| Defendants. | : | |
| | : | |

## ORDER

Before the Court is Defendants' Motion for Summary Judgment. (Doc. 15). For the reasons below, Defendants' Motion is **GRANTED in part** and **DENIED in part**.

## BACKGROUND

On April 23, 2021, Plaintiff DeShawn Gervin initiated this 42 U.S.C. § 1983 action against three Georgia Department of Community Supervision Officers—Defendants Pamela Florence, Hoke Hampton, and Tandria Milton.[1] (Doc. 1). The Georgia Department of Community Supervision (GDCS) was created in July 2015, combining supervisory functions for parolees and probationers that were previously assigned to the Georgia Board of Pardons and Paroles and the Georgia Department of Corrections. *See* O.C.G.A. § 42-3-3; (Doc. 15-2 ¶ 8 n.4). Plaintiff's claims arise from his arrest and detention for probation violations. (Doc. 1 ¶¶ 11–38).

In 2011, Plaintiff was charged in the Superior Court of Mitchell County, Georgia, with one count of criminal intent to commit burglary. (Doc. 15-2 ¶ 1; Doc. 16-1 ¶ 1; Doc. 15-12 at 3). Plaintiff pleaded guilty to this charge, and Judge A. Wallace Cato

---

[1]    The Court derives the relevant facts from Defendants' Statement of Material Facts (Doc. 15-2), Plaintiff's Response to Defendants' Statement of Material Facts (Doc. 16-1) and Statement of Additional Material Facts (Doc. 16-2), Defendants' Response to Plaintiff's Statement of Additional Facts (Doc. 17-1), and the record. The Court construes the facts in the light most favorable to Plaintiff, the nonmoving party. *See* Fed. R. Civ. P. 56; *Jacoby v. Baldwin County*, 835 F.3d 1338, 1342–43 (11th Cir. 2016).

sentenced Plaintiff to one year in jail, followed by nine years of probation. (Doc. 15-12 at 1, 3; Doc. 15-2 ¶¶ 2–3; Doc. 16-1 ¶¶ 2–3). At the sentencing hearing and in the Final Disposition Order, Judge Cato imposed only one condition of probation: that Plaintiff not return to the South Georgia Judicial Circuit, which includes Mitchell, Calhoun, Baker, Grady, and Decatur Counties. (Doc. 15-11 at 17:9–19:3; Doc. 15-12 at 1, 3; Doc. 15-2 ¶ 4; Doc. 16-1 ¶ 4). When Plaintiff was released from jail in January 2012, a sheriff escorted him to the Greyhound bus station, and Plaintiff boarded a bus traveling to Missouri. (Doc. 15-2 ¶¶ 5–6; Doc. 16-1 ¶¶ 5–6; Doc. 16-2 ¶ 9; Doc. 17-1 ¶ 9). Despite adhering to the terms of his probation and staying out of the South Georgia Judicial Circuit, on April 26, 2019, Plaintiff was arrested in North Carolina pursuant to a probation-violation warrant obtained by Defendant Florence in 2012. (Doc. 15-2 ¶ 13; Doc. 16-1 ¶ 13; Doc. 16-2 ¶¶ 1, 4; Doc. 17-1 ¶¶ 1, 4). Plaintiff was extradited to Georgia and detained in the Mitchell County Jail for 104 days. (Doc. 15-2 ¶¶ 14–15; Doc. 16-1 ¶¶ 14–15; Doc. 16-2 ¶ 2; Doc. 17-1 ¶ 2). His arrest and detention resulted from what appears to be a failure of GDCS and its officers to conduct even a cursory investigation before seeking Plaintiff's arrest.

In April 2012, Defendant Florence, the probation officer assigned to Plaintiff's case, learned that Plaintiff had been released from jail; but she was unable to determine his location. (Doc. 16-2 ¶ 12; Doc. 17-1 ¶ 12). On May 31, 2012, Defendant Florence requested and obtained a warrant for Plaintiff, alleging that he had failed to report to the probation office as directed and absconded from supervision. (Doc. 15-2 ¶ 9; Doc. 16-1 ¶ 9; Doc. 15-6 at 1). In the affidavit submitted with the warrant application, Defendant Florence stated:

> The Probationer has violated the terms and conditions of said Probation in that as of the 29th day of May, 2012, said probationer has failed to report to the Camilla Probation Office, Camilla, Mitchell County, Georgia, since release from the Mitchell County Jail on 01-20-12 and has absconded from probation supervision, his whereabouts are unknown.
>
> This constitutes a violation of Condition of Probation 4 and 6, which provides that defendant: #4: Report to the Probation-

2

> Parole supervisor *as directed* and permit such Supervisor to visit him (her) at home or elsewhere and #6: Do not change his (her) present place of abode, *move outside the jurisdiction of the Court*, or leave the State for any period of time without prior permission of the Probation Supervisor[.]

(Doc. 15-6 at 1 (emphasis added); Doc. 16-2 ¶ 5; Doc. 17-1 ¶ 5).

Of course, Plaintiff had committed no such violations. Given the sentence imposed by the Superior Court, Judge Cato did not impose a reporting or residency requirement. (Doc. 16-2 ¶ 6; Doc. 17-1 ¶ 6; *see* Doc. 15-12 at 1). The Final Disposition—the only document in the record[2] setting forth the sentence or terms of probation—clearly shows that neither General Condition 4—the standard reporting requirement—nor General Condition 6—the residency requirement—were applied to Plaintiff. (Doc. 15-12 at 1). During her deposition, Defendant Florence stated that before applying for the warrant for Plaintiff's arrest, she reviewed the face of Plaintiff's sentence; but this clearly was not true in light of the Final Disposition. (Doc. 15-4 at 40:17–41:4; Doc. 16-2 ¶ 14; Doc. 17-1 ¶ 14). Defendant Florence did admit that she did not review a copy of the transcript from Plaintiff's sentencing hearing or ask anyone for clarification about the sentence. (Doc. 15-4 at 42:22–43:3; Doc. 16-2 ¶ 21; Doc. 17-1 ¶ 21). Defendant Florence also admitted that she knew Judge Cato had a practice of reading the probation terms to defendants during their sentencing hearings and that she could request a transcript for a sentencing hearing if there were any questions about a given sentence. (Doc. 16-2 ¶ 20; Doc. 17-1 ¶ 20). Defendant Florence further testified that under GDCS Policy, she was required to review a copy of a probationer's sentence and undertake a reasonable investigation before submitting an arrest warrant application based on a probation violation. (Doc. 15-4 at 18:9–22:24; Doc. 16-2 ¶¶ 13, 18; Doc. 17-1 ¶¶ 13, 18). It is now clear that Defendant Florence neither reviewed the face of Plaintiff's sentence nor undertook a reasonable investigation before submitting

---

[2] The transcript from Plaintiff's January 4, 2012 sentencing hearing was not created until March 2021, in anticipation of this litigation. (*See* Doc. 15-11 at 20). The transcript confirms that banishment from the South Georgia Judicial Circuit was the only probation condition discussed by the court at that time. (Doc. 15-11 at 17:9–19:3).

the application for the arrest warrant. Plaintiff was arrested pursuant to the warrant issued based on Defendant Florence's averments. (Doc. 16-2 ¶ 1; Doc. 17-1 ¶ 1).

In May 2014, Defendant Hampton joined GDCS, working under Defendant Florence's supervision. (Doc. 15-2 ¶ 10; Doc. 16-1 ¶ 10). At Defendant Florence's direction, Defendant Hampton filed an affidavit requesting that Plaintiff's sentence be tolled until his whereabouts were determined. (Doc. 15-2 ¶ 12; Doc. 16-1 ¶ 12). A Superior Court of Mitchell County judge granted Defendant Hampton's request and entered an order tolling Plaintiff's sentence on October 31, 2014. (Doc. 15-8 at 1).

In July 2019, Defendant Milton was notified that Plaintiff had been arrested in North Carolina and extradited to Mitchell County. (Doc. 16-2 ¶ 23; Doc. 17-1 ¶ 23). During her deposition, Defendant Milton testified that she reviewed a copy of Plaintiff's sentence—presumably the Final Disposition—and then prepared a petition for revocation of Plaintiff's probation. (Doc. 15-9 at 21:9–22:21; Doc. 16-2 ¶¶ 24–25, 27; Doc. 17-1 ¶¶ 24–25, 27). While Defendant Milton claims that she reviewed Plaintiff's sentence before she prepared the petition, the charges therein are nearly identical to the allegations in Defendant Florence's warrant application:

> Count I:
>
> The Probationer has violated the terms and conditions of said Probation in that as of the 20th day of January, 2012, said Probationer has failed to report to the Camilla [G]DCS Office. Current whereabouts were unknown. This is a violation of general condition #4: Report to the Probation supervisor as directed and permit such supervisor to visit him at home or elsewhere.
>
> Count II:
>
> This Probationer has violated the terms and conditions of said Probation in that as of the 20th day of January, 2012, said Probationer moved without permission from his Officer and his current whereabouts were unknown. This is a violation of general condition #6: Do not change his present place of abode, move outside the jurisdiction of the Court, or leave the state for any period of time without prior permission of the Probation Supervisor.

(Doc. 15-10 at 3; *see* Doc. 15-6 at 1). Defendant Florence reviewed the petition before Defendant Milton filed it. (Doc. 15-2 ¶ 18; Doc. 16-1 ¶ 18). On July 18, 2019, a Superior Court of Mitchell County judge signed the petition and ordered Plaintiff to appear for a probation violation hearing the next month. (Doc. 15-10 at 1). Defendant Milton served Plaintiff with the petition on July 23, 2019, at the Mitchell County Jail, where he had been detained since April 26, 2019. (*Id.* at 1–3; Doc. 16-2 ¶ 28; Doc. 17-1 ¶ 28).

A hearing was held in the Superior Court of Mitchell County on August 7, 2019. (Doc. 15-2 ¶ 19; Doc. 16-1 ¶ 19). After hearing testimony from Defendant Milton and argument from the parties, the Superior Court judge concluded that the State did not prove Plaintiff had violated a condition of his probation and reinstated Plaintiff's original probation sentence. (Doc. 15-13 at 3–8; Doc. 15-2 ¶ 20; Doc. 16-1 ¶ 20). Plaintiff was released from jail the same day after a total of 104 days of detention. (Doc. 15-2 ¶ 21; Doc. 16-1 ¶ 21; Doc. 16-2 ¶ 3; Doc. 17-1 ¶ 3). Plaintiff's probation ended in January 2021, in accordance with the original nine-year term imposed by the Mitchell County Superior Court in 2012. (Doc. 15-2 ¶ 22; Doc. 16-1 ¶ 22).

In his Complaint, Plaintiff asserts 42 U.S.C. § 1983 claims against Defendants in their individual capacities. (Doc. 1 ¶¶ 5, 8–10). Plaintiff alleges that Defendants "violated [his] Fourth, Eighth, and Fourteenth Amendment" rights by causing him to be "arrested and jailed despite his compliance with [the] terms of [his] probation." (*Id.* ¶¶ 38–57). As relief, Plaintiff seeks nominal, compensatory, special, and punitive damages, attorneys' fees, costs, and "any additional or alternative legal or equitable relief that is just and appropriate." (*Id.* at 10). On May 16, 2022, Defendants filed the present Motion for Summary Judgment. (Doc. 15). Plaintiff responded on June 6, 2022, and Defendants replied on June 21, 2022. (Docs. 16, 17). Accordingly, Defendants' Motion for Summary Judgment is now ripe for review. *See* M.D. Ga. L.R. 7.3.1(A).

## LEGAL STANDARD

Under Federal Rule of Civil Procedure 56(a), summary judgment is appropriate "if the evidence shows 'that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.'" *Gogel v. Kia Motors Mfg. of Ga., Inc.*, 967

F.3d 1121, 1134 (11th Cir. 2020) (en banc). A genuine dispute of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Whitehead v. BBVA Compass Bank*, 979 F.3d 1327, 1328 (11th Cir. 2020) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). "An issue of fact is 'material' if, under the applicable substantive law," it is a legal element of the claim that "might affect the outcome of the case." *Felts v. Wells Fargo Bank, N.A.*, 893 F.3d 1305, 1311 (11th Cir. 2018) (quoting *Hickson Corp. v. N. Crossarm Co.*, 357 F.3d 1256, 1259–60 (11th Cir. 2004)). An issue of material fact "is 'genuine' if the record taken as a whole could lead a rational trier of fact to find for the nonmoving party." *Id.* (quoting *Hickson Corp.*, 357 F.3d at 1260). At summary judgment, the Court views the evidence "in the light most favorable to the non-moving party" and resolves factual disputes "in the nonmoving party's favor when sufficient competent evidence supports the nonmoving party's version of the disputed facts." *Whitehead*, 979 F.3d at 1328 (citations omitted); *Gogel*, 967 F.3d at 1134 (quoting *Thomas v. Cooper Lighting, Inc.*, 506 F.3d 1361, 1363 (11th Cir. 2007)).

The party moving for summary judgment "bears the initial burden" of showing, by reference to the record, "the absence of a genuine issue of material fact." *Whitehead*, 979 F.3d at 1328 (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)); *see Shaw v. City of Selma*, 884 F.3d 1093, 1098 (11th Cir. 2018). The movant can meet this burden by "identify[ing] the portions of the record" that show there is no "genuine issue of material fact" or "by demonstrating that the nonmoving party has failed to present sufficient evidence to support an essential element of the case" for which it bears the ultimate burden of proof. *Hornsby-Culpepper v. Ware*, 906 F.3d 1302, 1311 (11th Cir. 2018) (citing *Celotex*, 477 U.S. at 322–23). If the movant meets its initial burden, the nonmovant must then "go beyond the pleadings" and demonstrate "that there is a 'genuine issue for trial.'" *Whitehead*, 979 F.3d at 1328 (quoting *Celotex*, 477 U.S. at 324). The nonmovant must "present competent evidence in the form of affidavits, answers to interrogatories, depositions, admissions and the like, designating specific facts showing a genuine issue for trial." *Lamar v. Wells Fargo Bank*, 597 F. App'x 555, 557 (11th Cir. 2014) (per curiam) (citing *Celotex*, 477 U.S. at 324); *Anderson*, 477 U.S. at 256. "All material facts contained

6

in the movant's statement which are not specifically controverted by specific citation to particular parts of materials in the record shall be deemed to have been admitted, unless otherwise inappropriate." M.D. Ga. L.R. 56; *see Mason v. George*, 24 F. Supp. 3d 1254, 1260 (M.D. Ga. 2014).

## DISCUSSION

Plaintiff brings claims against all three Defendants for "Illegal Seizure under 42 U.S.C. § 1983 and the Fourth, Eighth, and/or Fourteenth Amendments." (Doc. 1 at 7). Defendants argue that they are entitled to summary judgment because (1) Defendant Hampton's actions "caused Plaintiff no cognizable harm" and (2) qualified immunity bars the claims against Defendants Florence and Milton. (Doc. 15-1 at 5–11; Doc. 17 at 1–7). Defendants argue that, although "Defendant Hampton sought to have the running of Plaintiff's term of probation tolled," his actions "caused Plaintiff no cognizable harm" because "Plaintiff's probation expired nine years after he was released from jail" and was never actually extended. (Doc. 15-1 at 7–8). In response, Plaintiff concedes this point, stating that, "[b]ased on Defendants' representations," he "does not oppose summary judgment as to [Defendant] Hampton." (Doc. 16 at 2 n.3). Defendant Hampton is, accordingly, entitled to summary judgment on Plaintiff's claims against him.

With regard to the remaining defendants, the Complaint alleges that Defendants Florence and Milton's actions caused Plaintiff to be unlawfully arrested and detained in violation of "the Fourth, Eighth, and/or Fourteenth Amendments." (Doc. 1 ¶¶ 39–57). In his brief opposing summary judgment, Plaintiff clarifies his claims, arguing that his arrest and detention establish a malicious prosecution claim under the Fourth Amendment, a claim for cruel and unusual punishment in violation of the Eighth Amendment, and procedural and substantive due process claims under the Fourteenth Amendment. (Doc. 16 at 16–17). Defendants argue that they are entitled to qualified immunity for all of these claims because Plaintiff has failed to establish any violation of his constitutional rights. (Doc. 15-1 at 5–11; Doc. 17 at 1–7).

"Qualified immunity protects government employees from suit in their individual capacities for discretionary actions in which they engage in the course of their duties."

*Alcocer v. Mills*, 906 F.3d 944, 950–51 (11th Cir. 2018) (citations omitted). The doctrine "protects 'all but the plainly incompetent or those who knowingly violate the law.'" *White v. Pauly*, 580 U.S. 73, 79 (2017) (quoting *Mullenix v. Luna*, 577 U.S. 7, 12 (2015) (per curiam)); *Malley v. Briggs*, 475 U.S. 335, 341 (1986). But qualified immunity does not protect an official who "knew or reasonably should have known that the action he took within his sphere of official responsibility would violate" the plaintiff's constitutional rights. *Alcocer*, 906 F.3d at 951 (quoting *Holmes v. Kucynda*, 321 F.3d 1069, 1077 (11th Cir. 2003)). If "the state of the law at the time of an incident provided 'fair warning' to the defendants that their alleged conduct was unconstitutional," they are not entitled to qualified immunity. *Mikko v. City of Atlanta*, 857 F.3d 1136, 1146 (11th Cir. 2017) (quoting *Salvato v. Miley*, 790 F.3d 1286, 1292 (11th Cir. 2015)).

An official asserting qualified immunity "bears the initial burden to prove that he acted within his discretionary authority." *Williams v. Aguirre*, 965 F.3d 1147, 1156 (11th Cir. 2020) (quoting *Dukes v. Deaton*, 852 F.3d 1035, 1041 (11th Cir. 2017)). If the official shows that he was acting within his discretionary authority, "the burden then shifts to the plaintiff to show that qualified immunity should not apply." *Lewis v. City of W. Palm Beach*, 561 F.3d 1288, 1291 (11th Cir. 2009) (citation omitted). Plaintiff does not dispute that Defendants acted within their discretionary authority when they obtained an arrest warrant and petitioned for modification or revocation of Plaintiff's probation. (*See* Doc. 16 at 8–17). Thus, Plaintiff "must prove that qualified immunity is not appropriate" in this case. *See Luke v. Gulley* (*Luke II*), 50 F.4th 90, 95 (11th Cir. 2022) (per curiam) (citing *Williams*, 965 F.3d at 1156–57).

To overcome an official's qualified-immunity defense, a plaintiff must prove both (1) that the government official's conduct "violated his constitutional right" and (2) "that 'the right was clearly established at the time of the violation.'" *Washington v. Howard*, 25 F.4th 891, 898 (11th Cir. 2022) (quoting *Barnes v. Zaccari*, 669 F.3d 1295, 1303 (11th Cir. 2012)); *see Paez v. Mulvey*, 915 F.3d 1276, 1284 (11th Cir. 2019) (citation omitted). "[A] plaintiff can prove that a particular constitutional right [was] clearly established" by pointing to (1) "binding precedent tied to particularized facts in a materially

8

similar case," (2) "a broader, clearly established principle" that "control[s] the novel facts of [the] particular case," or (3) "conduct which so obviously violates [the] Constitution that prior case law is unnecessary." *Waldron v. Spicher*, 954 F.3d 1297, 1304–05 (11th Cir. 2020) (fifth alteration in original) (citations omitted). A court's assessment of whether the plaintiff has met his burden "is fluid" and may be done in whatever order is deemed most appropriate for the case. *Lewis*, 561 F.3d at 1291 (citing *Pearson v. Callahan*, 555 U.S. 223, 236 (2009)); *see Paez*, 915 F.3d at 1284 ("These two requirements may be analyzed in any order." (citation omitted)). "If the evidence at the summary judgment stage, construed in the light most favorable to the non-movant, contains 'facts inconsistent with granting qualified immunity, then the case and the qualified immunity defense proceed to trial.'" *Bradley v. Benton*, 10 F.4th 1232, 1238 (11th Cir. 2021) (quoting *Stryker v. City of Homewood*, 978 F.3d 769, 773 (11th Cir. 2020)), *cert. denied*, 142 S. Ct. 1112 (2022).

I.      **Fourth Amendment Claim**

Plaintiff brings a Fourth Amendment claim for malicious prosecution. (Doc. 1 ¶¶ 39–46, 51–56). A Fourth Amendment claim for malicious prosecution is "'shorthand' for a claim of deprivation of liberty pursuant to legal process." *Laskar v. Hurd*, 972 F.3d. 1278, 1292 (11th Cir. 2020). A seizure is "pursuant to legal process" if it is "warrant-based" or if it "follow[s] an arraignment, indictment, or probable-cause hearing." *Williams*, 965 F.3d at 1158; *see Black v. Wigington*, 811 F.3d 1259, 1267 (11th Cir. 2016) ("Legal process includes an arrest warrant." (citation omitted)). A malicious prosecution occurs "when legal process itself goes wrong—when, for example, a judge's probable-cause determination is predicated solely on a police officer's false statements." *Manuel v. City of Joliet*, 580 U.S. 357, 367 (2017). In these circumstances, "[l]egal process has gone forward, but it has done nothing to satisfy the Fourth Amendment's probable-cause requirement." *Id.* at 367.

To assert "a federal malicious prosecution claim under § 1983, a plaintiff must prove (1) the elements of the common law tort of malicious prosecution, and (2) a violation of [his] Fourth Amendment right to be free of unreasonable seizures." *Paez*, 915 F.3d at 1285 (citation omitted). "[T]he common-law elements of malicious prosecution" require

9

the plaintiff to show "that the officers 'instituted or continued' a criminal prosecution against him, 'with malice and without probable cause,' that terminated in his favor and caused damage to him." *Williams*, 965 F.3d at 1157 (citation omitted). To demonstrate a Fourth Amendment violation, "a plaintiff must establish (1) that the legal process justifying his seizure was constitutionally infirm and (2) that his seizure would not otherwise be justified without legal process." *Id.* at 1165. "[A]n arrest warrant is constitutionally infirm when either 'the officer who applied for the warrant should have known that his application failed to establish probable cause or that an official . . . intentionally or recklessly made misstatements or omissions necessary to support the warrant.'" *Luke II*, 50 F.4th at 95–96 (quoting *Williams*, 965 F.3d at 1165). Recognizing the "significant overlap" between a plaintiff's burden to demonstrate a Fourth Amendment violation and the common-law elements of malicious prosecution, the Eleventh Circuit has held that "[i]f a plaintiff establishes that a defendant violated his Fourth Amendment right to be free from seizures pursuant to legal process, he has also established that the defendant instituted criminal process against him with malice and without probable cause." *Luke v. Gulley* (*Luke I*), 975 F.3d 1140, 1144 (11th Cir. 2020) (citing *Williams*, 965 F.3d at 1162–65).

Defendants do not dispute that they lacked probable cause or arguable probable cause to arrest, detain, and initiate probation revocation proceedings against Plaintiff. Instead, Defendants argue only that "Plaintiff cannot prove a required element of a malicious prosecution claim" under the Fourth Amendment because "probation revocation proceedings are not criminal prosecutions." (Doc. 15-1 at 5–7; Doc. 17 at 1–3). Defendants rely on the Eleventh Circuit's unpublished opinion in *Smith v. Mitchell*, 856 F. App'x 248 (11th Cir. 2021) (per curiam). (*See* Doc. 15-1 at 5–6; Doc. 17 at 1–2). In *Smith*, the Eleventh Circuit held that a plaintiff's malicious prosecution "claim accrued on the date of his arrest because a probation revocation hearing is not a 'criminal prosecution' for the purposes of a malicious-prosecution claim." *Smith*, 856 F. App'x at 250 (citations omitted). Of course, this "[u]npublished opinion [is] not considered binding precedent." *See* 11th

10

Cir. R. 36-2. The only binding precedent Defendants have identified[3] is a decision from the former Fifth Circuit, where the court held that "the double jeopardy clause of the Fifth Amendment . . . does not bar consideration of certain evidence in probation revocation proceedings where the same evidence has formed the basis for a previous parole revocation proceeding." *United States v. Whitney*, 649 F.2d 296, 297 (5th Cir. Unit B 1981) (per curiam); (Doc. 15-1 at 6).

In the absence of binding precedent holding that a probation revocation is not a criminal proceeding for purposes of a malicious prosecution claim,[4] this Court is persuaded by the reasoning of its sister court:

> [I]n the context of a § 1983 malicious prosecution claim, a probation revocation is a continuation of a criminal prosecution. . . . It is true that a probation revocation may not result in a criminal conviction, and in some contexts, a

---

[3]      Defendants also rely on decisions from Georgia courts that "have indicated that probation revocation proceedings in Georgia are not criminal in nature." (Doc. 15-1 at 5–6 (first citing *State v. Thackston*, 716 S.E.2d 517, 518–19 (Ga. 2011); and then citing *Morgan v. State*, 706 S.E.2d 588, 589 (Ga. Ct. App. 2011)). "[C]ontemporary Georgia law," however, is not "relevant" when "evaluat[ing] [an] [officer]'s conduct . . . a claim of unreasonable seizure pursuant to legal process under section 1983." *Luke II*, 50 F.4th at 96–97 ("A district court errs when it relies on modern tort law or the law of the forum state . . . to resolve a [malicious prosecution] claim . . . under section 1983."). Because Plaintiff's "malicious prosecution [claim] is brought as a federal constitutional tort, the outcome of the case does not hinge on state law, but federal law, and does not differ depending on the tort law of a particular state." *See Blue v. Lopez*, 901 F.3d 1352, 1358 (11th Cir. 2018) (quoting *Wood v. Kesler*, 323 F.3d 872, 880 (11th Cir. 2003)).
[4]      The Court recognizes that the Eleventh Circuit has held that the revocation of probation is not a criminal proceeding in other contexts. *See United States v. Dennis*, 26 F.4th 922, 924, 927 (11th Cir. 2022) (noting that "the revocation of probation is 'not a stage of a criminal prosecution'" when addressing "the notice that a probationer must receive before her probation can be revoked" under the Due Process Clause of the Fifth Amendment (citations omitted)); *Holmes v. Crosby*, 418 F.3d 1256, 1258 (11th Cir. 2005) (stating that "a parole hearing is not a criminal hearing or grand jury proceeding" when considering "whether a parole officer [wa]s entitled to quasi-judicial immunity" for testifying at a parole revocation hearing); *United States v. Copeland*, 20 F.3d 412, 414–15 (11th Cir. 1994) (explaining that "a defendant facing possible revocation of parole[,] probation," or supervised release is "not entitled to all of the procedural protections afforded a defendant in a criminal proceeding," so due process does not "demand that [a] district court turn its oral findings into a written order" when revoking his supervised release); *United States v. Taylor*, 931 F.2d 842, 848 (11th Cir. 1991) (holding that "revocation hearings are not criminal prosecutions under the sixth amendment and thus, the defendant is not constitutionally guaranteed a speedy hearing"). But, given the clear fact that the Plaintiff was arrested pursuant to an arrest warrant that purported to establish probable cause, was brought back to Georgia in police custody, was detained for 104 days, was brought before a court to answer the charges in the petition, and could have faced additional prison time if found guilty of the charges, the fundamental protections afforded by the Fourth Amendment against unlawful search and seizure appear to be implicated; and the circumstances require a specific analysis under the Fourth Amendment.

probation revocation hearing is not considered a criminal proceeding. But under the facts of this case, the plaintiff was subject to an arrest warrant, he was taken into custody (for [104] days), and extradited to another jurisdiction where he was brought before a tribunal to answer for the alleged violations of the terms of his probation. Therefore, the court finds that the violation reports initiated by the defendants in this case may serve as the basis for a malicious prosecution claim.

*Johnson v. Shannon*, 484 F. Supp. 3d 1344, 1349 (N.D. Ga. 2020) (citations omitted); *accord Williams v. Ga. Dep't of Corr.*, 1:11-CV-1296-AT, 2012 WL 12895637 (N.D. Ga. Dec. 18, 2012) (concluding that "a petition to revoke probation and adjudicate the probationer guilty may serve as the basis for a malicious prosecution claim"), *aff'd sub nom. Williams v. Morahan*, 539 F. App'x 934 (11th Cir. 2013) (per curiam); *but see Hilmo v. Jackson*, No. 2:20-CV-292-RWS, 2022 WL 4230549, at *7 & n.2 (N.D. Ga. Aug. 15, 2022), *appeal docketed*, No. 22-13015 (11th Cir. Sept. 7, 2022).

The Supreme Court has emphasized that "[c]ommon-law principles are meant to guide rather than to control the definition of § 1983 claims." *Manuel*, 580 U.S. at 370 (citations omitted). Thus, the "elements of [a malicious prosecution claim]" must be defined "in light of the constitutional provision at issue." *Williams*, 965 F.3d at 1157 (citation omitted); *see also Manuel*, 580 U.S. at 370 (Because "[c]ommon-law principles . . . serv[e] 'more as a source of inspired examples than of prefabricated components'" for § 1983 claims, "[whe]n applying, selecting among, or adjusting common-law approaches, courts must closely attend to the values and purposes of the constitutional right at issue." (citations omitted)). Excluding probation revocation proceedings from the type of "criminal proceedings" involved in a malicious prosecution claim under the Fourth Amendment would impermissibly "elevate the common law over the Constitution." *See Williams*, 965 F.3d at 1157; *see also Laskar*, 972 F.3d at 1295 (explaining that courts cannot "give priority to the common law over the Fourth Amendment" when considering a malicious prosecution claim under § 1983).

Defendants argue only that "Plaintiff cannot prove a required element" because "probation revocation proceedings are not criminal prosecutions"; therefore, the analysis below addresses only the question of whether each Defendant's conduct violated a constitutional right that was clearly established at the time. (*See* Doc. 15-1 at 5–7).

**A. Defendant Florence**

Plaintiff has shown that the affidavit Defendant Florence submitted with the arrest warrant application contained false statements and did not establish probable cause or arguable probable cause. (*See* Doc. 15-6 at 1). And Plaintiff's 104-day detention "was far too long to be justified without legal process." *See Williams*, 965 F.3d at 1167. Thus, he has demonstrated that Defendant Florence violated his Fourth Amendment right to be free from seizures pursuant to legal process. *See Luke II*, 50 F.4th at 96.

"[F]alsifying facts to establish probable cause is patently unconstitutional and has been so" since well before Plaintiff's arrest. *See Kingsland v. City of Miami*, 382 F.3d 1220, 1232 (11th Cir. 2004), *abrogated on other grounds by Nieves v. Bartlett*, 139 S. Ct. 1715 (2019); "[An] officer violates the Constitution if, in order to obtain a warrant, she . . . testifies in reckless disregard of the truth." *Kelly v. Curtis*, 21 F.3d 1544, 1554 (11th Cir. 1994). Furthermore, when an officer's misstatements in a warrant application are "clearly critical to a finding of probable cause[,] the fact of recklessness may be inferred from proof of the omission itself." *United States v. Martin*, 615 F.2d 318, 329 (5th Cir. 1980). Defendant Florence "possessed information giving rise to an exculpatory inference"—the actual terms and conditions imposed as Plaintiff's sentence—but did nothing to examine 'easily discoverable facts' that would confirm or contradict that inference." *See Washington v. Rivera*, 939 F.3d 1239, 1248 (11th Cir. 2019); *see also Cozzi v. City of Birmingham*, 892 F.3d 1288, 1297–98 (11th Cir. 2018) (denying qualified immunity for officer who "unreasonably disregarded" "plainly exculpatory and easily verifiable information" in his possession). While Plaintiff has not set forth a case explicitly stating that it is unconstitutional to falsify facts in an application for an arrest warrant for a probation violation, "officials can still be on notice that their conduct violates established law even in novel factual circumstances." *Cantu v. City of Dothan*, 974 F.3d 1217, 1233

(11th Cir. 2020) (quoting *Hope v. Pelzer*, 536 U.S. 730, 741 (2002)). Thus, to the extent that the fact that this arrest warrant was issued related to a probation revocation constitutes a novel fact, "a broader, clearly established principle . . . control[s] the novel facts of [this] case." *See Waldron*, 954 F.3d at 1305 (citation omitted).

Defendant Florence is not entitled to qualified immunity here because "it is well established that an arrest without probable cause is an unreasonable seizure that violates the Fourth Amendment." *Grider v. City of Auburn*, 618 F.3d 1240, 1256 (11th Cir. 2010); *see also Daniels v. Bango*, 487 F. App'x 532, 538–40 (11th Cir. 2012) (per curiam) (qualified immunity denied where officer's "misleading information" and "reckless[] omi[ssions]" in arrest warrant application were based on a "cursory" and "insufficient investigation"). An officer is not free to seek an arrest warrant based on falsehoods in any circumstance. *See Williams*, 965 F.3d at 1169 ("[T]he prohibition of intentional, material misstatements in warrant applications" is an "uncontroverted and well-established rule," and "'every reasonable official would interpret [Supreme Court and Eleventh Circuit] precedents to establish' that" such "misstatements . . . violate the Constitution." (quoting *District of Columbia v. Wesby*, 138 S. Ct. 577, 590 (2018)) (other citations omitted)). Where a jury could find that an officer's statements used to procure an arrest warrant were in "reckless disregard of the truth," qualified immunity is not appropriate. *Holmes*, 321 F.3d at 1084 (first quoting *Kelly*, 21 F.3d at 1554; then citing *Jones v. Cannon*, 174 F.3d 1271, 1285 (11th Cir. 1999)) (other citation omitted).

There is no genuine dispute that Defendant Florence intentionally or recklessly made false statements in her affidavit when she claimed that Plaintiff had violated General Conditions 4 and 6. (*See* Doc. 15-6 at 1). Nor is there a genuine dispute that the false statements were critical to the finding that probable cause supported the issuance of the arrest warrant. No reasonable officer could have believed that she had probable cause to seek the arrest of and initiate probation revocation proceedings against Plaintiff for violating non-existent conditions of his probation. Defendant Florence "simply did not bother to do what any officer acting reasonably in the circumstances would have done to clarify the factual situation" and what had long been required under the Fourth

14

Amendment. *See Kingsland*, 382 F.3d at 1228–29 (quoting *Sevigny v. Dicksey*, 846 F.2d 953, 958 (4th Cir. 1988)).

The clearly established law that officers may not intentionally or recklessly make false statements in an arrest warrant application gave Defendant Florence sufficient notice that her conduct would violate Plaintiff's constitutional rights. *See Williams*, 965 F.3d at 1169 ("Notwithstanding the ambiguity in our standard of malicious prosecution, [Plaintiff] had a clearly established right to be free from a seizure based on intentional and material misstatements in a warrant application."). A reasonable jury could conclude that in seeking the warrant based on false pretenses and causing Plaintiff's unlawful seizure, Defendant Florence "knowingly violated the law" or was "plainly incompetent," such that qualified immunity does not apply. *See Malley*, 475 U.S. at 345. Accordingly, Defendant Florence is not entitled to qualified immunity or summary judgment on Plaintiff's Fourth Amendment malicious prosecution claim.

## B. Defendant Milton

"[F]or the purposes of [a] malicious prosecution" claim under § 1983, an officer is liable for violating the Fourth Amendment if she "took an affirmative action to advance the legal process." *Howard*, 25 F.4th at 912; *Wood*, 323 F.3d at 882 (holding that "a criminal prosecution . . . continued . . . without probable cause" can violate the Fourth Amendment). While "[t]he Fourth Amendment imposes no affirmative duty" to "run after [a] warrant" if "probable cause ha[s] dissipated," an "officer cannot intentionally or recklessly make material misstatements or omissions in later testimony to continue detention, such as at an arraignment, indictment, or bond hearing." *Howard*, 25 F.4th at 906–07 (citations omitted); *see Manuel*, 580 U.S. at 369 n.8 (explaining that false testimony or fabricated evidence can result in a Fourth Amendment violation "[w]hatever [the] precise form . . . [of] the proceeding").

There is no genuine dispute that Defendant Milton took the following affirmative actions to advance the legal process against Plaintiff: preparing the petition to revoke Plaintiff's probation, filing the petition with the court, serving the petition on Plaintiff while he was detained, and testifying against Plaintiff at the probation revocation hearing.

15

(Doc. 15-10 at 1; Doc. 16-2 ¶¶ 27–29; Doc. 17-1 ¶¶ 27–29). At each stage, Defendant Milton intentionally or recklessly made or submitted material misstatements in order to advance the legal process. No reasonable officer could have believed that probable cause existed to support or continue Plaintiff's detention and prosecution for violating non-existent terms of his probation. At the time that Defendant Milton drafted and filed the petition and testified at the hearing, existing law clearly established that an officer must "conduct a reasonable investigation to establish probable cause." *Rankin v. Evans*, 133 F.3d 1425, 1435 (11th Cir. 1998); *see, e.g.*, *Howard v. Gee*, 538 F. App'x 884, 890–91 (11th Cir. 2013) (per curiam) (affirming the denial of qualified immunity at summary judgment where the "officers failed to take even the most basic investigatory steps" (citing *Kingsland*, 382 F.3d at 1232–33)). It was also clearly established "that an official, including an individual who did not apply for the warrant," violates the Fourth Amendment when the official "intentionally or recklessly ma[kes] misstatements" necessary to a finding of probable cause. *See Williams*, 965 F.3d at 1165 (first citing *Holmes*, 321 F.3d at 1083; and then citing *Jones*, 174 F.3d at 1284–85) (other citations omitted); *Kelly*, 21 F.3d at 1554–55 (where "a reasonable police officer would have known that [their] testimony was not just negligently false, but recklessly so," qualified immunity is not appropriate).

"Qualified immunity 'operates to protect officers from sometimes hazy border[s]' of constitutional rules." *Bailey v. Swindell*, 940 F.3d 1295, 1303 (11th Cir. 2019) (alteration in original) (quoting *Brosseau v. Haugen*, 543 U.S. 194, 198 (2004)). Here, however, Defendant Milton's intentional or recklessly false statements in the revocation petition and hearing testimony "crossed a constitutional line that—far from being hazy—was 'not only firm but also bright.'" *See id.* (citation omitted). A jury could easily conclude that Defendant Milton "consciously ignored information [she] already possessed that cast significant doubt on whether" Plaintiff had violated a condition of his probation. *Rivera*, 939 F.3d at 1248. At the time she prepared the probation revocation petition and testified at the revocation hearing, Defendant Milton "unreasonably disregard[ed]" the "readily verifiable exculpatory fact" that neither General Condition 4 nor 6 were a condition of Plaintiff's sentence. *See Cozzi*, 892 F.3d at 1294, 1297. If Defendant Milton did, as she

testified in her deposition, review Plaintiff's sentence before she took these actions, a reasonable jury could conclude that Defendant Milton was "plainly incompetent or . . . knowingly violate[d] the law." *See White*, 580 U.S. at 79 (citation omitted). Accordingly, Defendant Milton is not entitled to qualified immunity or summary judgment on Plaintiff's malicious prosecution claim.

## II.   Eighth Amendment Claim

Plaintiff also asserts that Defendants violated his right to be free from cruel and unusual punishment under the Eighth Amendment. (Doc. 1 ¶ 57; Doc. 16 at 16–17). He argues that Defendants acted with "deliberate indifference when [they] ignored that Plaintiff was entitled to his liberty" and caused him to be detained, despite "full compliance with the terms of his probation." (Doc. 16 at 16–17). Defendants argue that they are entitled to qualified immunity because "[t]he Eighth Amendment applies only to claims concerning the conditions of confinement, not to challenges to the fact of confinement," and Plaintiff has identified "no binding authority holding otherwise." (Doc. 17 at 5–7).

Plaintiff relies on two cases, *Whirl v. Kern*, 407 F.2d 781 (5th Cir. 1968), and *McCurry v. Moore*, 242 F. Supp. 2d 1167 (N.D. Fla. 2002), for the proposition that "[w]rongful detention of a convicted person violates the Eighth Amendment's prohibition on cruel and unusual punishment." (Doc. 16 at 16–17). These cases are inapposite. The Fifth Circuit's decision in *Whirl v. Kern* involved a claim that the plaintiff's unlawful detention "deprived [him] of liberty and due process as guaranteed by the Fourteenth Amendment" and makes no reference to the Eighth Amendment. 407 F.2d at 786 n.4, 791. In *McCurry v. Moore*, the district court noted that other circuits have found "that imprisonment beyond the expiration of [a] prisoner's sentence violates 'the [E]ighth [A]mendment's proscription against cruel and unusual punishment.'" 242 F. Supp. 2d at 1179 (citations omitted). The *McCurry* Court acknowledged that it could find no cases in the Eleventh Circuit making such a holding. *Id.* Furthermore, *McCurry*, in addition to being non-binding, deals with an expired sentence. *Id.* at 1178–80. Here, Plaintiff's sentence was not yet expired. Plaintiff has not identified any cases applying the Eighth Amendment to detention based on an alleged probation violation. Thus, Plaintiff has failed to meet his

17

burden of showing that any reasonable officer would have fair notice that detention due to an alleged probation violation would subject them to § 1983 liability under the Eighth Amendment.

Furthermore, Plaintiff has not alleged facts stating any other claim under the Eighth Amendment. The Eleventh Circuit has held that "[t]he Eighth Amendment gives rise to three distinct claims in the prison context: those challenging the specific conditions of confinement, excessive use of force, and deliberate indifference to a prisoner's serious medical needs." *Jacoby v. Mack*, 755 F. App'x 888, 896 (11th Cir. 2018) (per curiam) (citing *Thomas v. Bryant*, 614 F.3d 1288, 1303–04 (11th Cir. 2010)). The allegations in Plaintiff's Complaint do not implicate any condition of his detention, use of force, or medical need. Accordingly, Defendants are entitled to qualified immunity and summary judgment as to Plaintiff's Eighth Amendment claim.

## III.    Fourteenth Amendment Claims

Plaintiff brings claims against Defendants under the Due Process Clause of the Fourteenth Amendment. (Doc. 1 ¶¶ 49–50, 57). He argues that Defendants' actions constituted "the denial of due process" because (1) "Plaintiff was not afforded adequate process by state officials pre- or post-deprivation" and (2) Defendants' "deliberate indifference to [his] rights . . . shock the conscience." (*Id.* ¶¶ 50, 48–49). In support of his claim, Plaintiff points to several Eleventh Circuit and Supreme Court decisions holding that "deliberate indifference to a person's liberty when a person is entitled to release" violates the Fourteenth Amendment." (Doc. 16 at 17). Defendants argue that they are entitled to qualified immunity because Plaintiff's cited cases are "sufficiently factually distinct from this [case]" as they "do not concern post-release detention" and therefore fail to clearly establish that Defendants' conduct violated the Fourteenth Amendment. (Doc. 17 at 6–7).

None of the cases Plaintiff relies on establish a Fourteenth Amendment violation in the context of detention pending a probation revocation hearing. More importantly, the Supreme Court has specifically addressed what substantive and procedural due process requires in the specific context of probation revocation proceedings. In a series of cases,

18

the Supreme Court has held that probationers "do not enjoy 'the absolute liberty to which every citizen is entitled, but only . . . conditional liberty properly dependent on observance of special [probation] restrictions." *Griffin v. Wisconsin*, 483 U.S. 868, 874 (1987) (omission and alteration in original) (quoting *Morrissey v. Brewer*, 408 U.S. 471, 480 (1972)); *Gagnon v. Scarpelli*, 411 U.S. 778, 781 (1973). A probationer charged with violating a condition of his probation is entitled to some protections under the Fourteenth Amendment, but they are not entitled to "the full panoply of rights" afforded to the accused in a criminal case. *Penn. Bd. of Prob. & Parole v. Scott*, 524 U.S. 357, 365 n.5 (1998) (quoting *Morrissey*, 408 U.S. at 480); *Carchman v. Nash*, 473 U.S. 716, 725 (1985). Nonetheless, "[t]he Due Process Clause of the Fourteenth Amendment imposes procedural and substantive limits on the revocation of th[is] conditional liberty." *Black v. Romano*, 471 U.S. 606, 610 (1985) (citation omitted).

The Supreme Court has held that due process requires certain procedural requirements in probation revocation proceedings, including "a preliminary and a final revocation hearing"—although "the factfinding body" conducting the hearing "need not be composed of judges or lawyers." *Id.* at 611–12. "The revocation hearing must occur 'within a reasonable time after the [individual] is taken into custody,'" but "the Supreme Court has yet to articulate a rule for deciding" at what point "a delay violates an individual's due process rights." *Castillo v. Florida*, 630 F. App'x 1001, 1006–07 (11th Cir. 2015) (per curiam) (quoting *Morrissey*, 408 U.S. at 488). The Eleventh Circuit also has not established any bright line rule for when a delay rises to the level of a due process violation, but it has held "that revocation hearings are not criminal prosecutions under the [S]ixth [A]mendment and thus, the defendant is not constitutionally guaranteed a speedy hearing." *Taylor*, 931 F.2d at 848. Although Plaintiff was detained for approximately three months before the revocation hearing, courts have found similar—and significantly longer—delays in custody for violating a condition of release were not unreasonable. *See, e.g., id.* (one-year delay not unreasonable); *United States v. Hicks*, 453 F. App'x 940, 943 (11th Cir. 2012) (per curiam) (same); *United States v. Dempsey*, 479 F. App'x 935, 937 (11th Cir.

19

2012) (per curiam) (three-month delay not unreasonable); *Parrish v. Wainwright*, 614 F.2d 1028, 1029 (5th Cir. 1980) (same).

Furthermore,

> due process entitles the probationer to "written notice of the claimed violations of" probation; disclosure of the evidence against him; the "opportunity to be heard in person and to present witnesses and documentary evidence"; "the right to confront and cross-examine adverse witnesses"; a neutral and detached hearing body; and "a written statement by the factfinders as to the evidence relied on and reasons for revoking[ ]probation.

*Dennis*, 26 F.4th at 927 (quoting *Gagnon*, 411 U.S. at 786); *Black*, 471 U.S. at 611–12. "In some circumstances," an individual may be entitled "to the assistance of counsel" in revocation proceedings. *Black*, 471 U.S. at 612 (citing *Gagnon*, 411 U.S. at 790).

The Supreme Court has emphasized that these "procedural safeguards" are sufficient to "protect the [individual] against revocation of probation in a constitutionally unfair manner." *Id.* at 613 (first citing *Gagnon*, 411 U.S. at 790; and then citing *Morrissey*, 408 U.S. at 480). Substantive due process has been found to require further protections in only two limited circumstances. *Id.* at 614–15. In *Bearden v. Georgia*, the Supreme Court held that before a court "automatically" revokes probation and "imprison[s] a person solely" for failure to pay a fine, it must consider "the reasons for the failure to pay" and whether an "alternat[ive] to incarceration" would "adequate[ly] meet the State's interests in punishment and deterrence." 461 U.S. 660, 672–74, 666–67 (1983). Otherwise, probation revocation proceedings will comply with the constitutional requirements of substantive due process as long as the "finding that [the defendant] violated the conditions of his probation" is not "totally devoid of evidentiary support." *See Douglas v. Buder*, 412 U.S. 430, 432 (1973) (alteration in original); *see also Black*, 471 U.S. at 615–16 ("The decision to revoke Romano's probation satisfied the requirements of due process . . . we agree[] that there was sufficient evidence to support the state court's finding that Romano had violated the conditions of his probation.").

Here, the undisputed evidence in the record shows that Plaintiff received "written notice of the claimed violations of his probation" in the form of the "petition for revocation of Plaintiff's probation," which specifically set forth the alleged violations. (Doc. 15-10 at 1–3). Plaintiff was served with the petition. (Doc. 16-2 ¶ 28; Doc. 17-1 ¶ 28). At the probation revocation hearing, Plaintiff was represented by counsel, given the "opportunity to show . . . that he did not violate the conditions" of his probation and to "present documentary evidence," and was allowed to cross-examine the sole adverse witness, Defendant Milton. *See Black*, 471 U.S. at 612; (Doc. 15-13 at 3:2–7:17). Moreover, at the conclusion of the hearing, the court found that "the State didn't meet [its] burden" and there was insufficient evidence to find Plaintiff in violation of his probation conditions. (Doc. 15-13 at 7:23–8:3). Given that the court ruled in his favor, Plaintiff certainly does not contend that the evidence was not sufficient to support the state court's finding. Plaintiff has not alleged any facts or presented any evidence that would allow a reasonable jury to conclude that his procedural or substantive due process rights were violated under applicable law. *See Black*, 471 U.S. at 615–16. Accordingly, Defendants are entitled to qualified immunity and summary judgment on Plaintiff's Fourteenth Amendment claims.

## CONCLUSION

For the reasons set forth above, Defendants' Motion for Summary Judgment (Doc. 15) is **GRANTED in part** and **DENIED in part**. Defendants' Motion is **GRANTED** as to all claims against Defendant Hampton and the Eighth Amendment and Fourteenth Amendment claims against Defendants Florence and Milton. Defendants' Motion is **DENIED** as to Plaintiff's Fourth Amendment malicious prosecution claims against Defendants Florence and Milton.

**SO ORDERED**, this 31st day of March, 2023.

/s/ Leslie A. Gardner
**LESLIE A. GARDNER, JUDGE**
**UNITED STATES DISTRICT COURT**